Isaac S. Ingram and Ova O. Ingram v. Commissioner.
Isaac S. Ingram v. Commissioner
Docket No. 40642.
United States Tax Court
1953 Tax Ct. Memo LEXIS 194; 12 T.C.M. (CCH) 726; T.C.M. (RIA) 53230; June 29, 1953
H. D. Rollins, Esq., Davidson Building, Charleston, W. Va., for the petitioners. Reuben G. Clark, Jr., Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner has determined a deficiency in income tax for the year 1950 in the amount of $5,070.24. Under section 294 (d)(1)(A), the respondent has added $734.00 to the tax. Findings of Fact The facts which have been stipulated are found as facts. The stipulation is incorporated herein by this reference. Isaac S. Ingram, referred to hereinafter as the petitioner, *195 resides in Charleston, West Virginia. The petitioner and his wife, Ova, filed a joint return for the taxable year with the collector for the district of West Virgina. In 1950, under circumstances hereinafter set forth, petitioner received stock of the Baird Hardware Company, Inc., of Charleston, West Virginia. He sold his interest in the stock in 1950 for $22,837.50. He included in his gross income the sum of $11,418.75, as long term capital gain. No cost or other basis for the stock was claimed in the return. The Commissioner determined that the entire proceeds constituted ordinary taxable income from "Salary", and adjusted petitioner's taxable net income accordingly. In determining the deficiency, he included in ordinary income the fair market value of the stock, $22,837.50, plus certain adjustments representing interest received on dividends and court costs recovered on litigation involving the stock in the amount of $290.03, or a total amount of $23,127.53. Petitioners did not file a declaration of estimated tax for the year 1950. Petitioners have at all times herein relevant kept their books and made their returns on the cash receipts and disbursements basis. Isaac S. *196 Ingram was employed by the Baird Hardware Company, Inc., since 1927 and, for sometime prior to July, 1942, occupied the position of shipping clerk for that company. In July, 1942, following the death of the previous manager of the Baird Hardware Company, A. J. Humphreys, president of the company and owner of a majority of the outstanding common and preferred stock, persuaded petitioner to accept the managership of the company at a nominal salary. At or about this time, petitioner entered into an oral agreement with Humphreys under the terms of which petitioner agreed to accept the managership of the Baird Hardware Company at a relatively low salary and to continue in the managership of said company during the remaining years of the life of Humphreys, who was at this time a man about 80 years of age. In consideration of the petitioner's agreement, Humphreys agreed that at his death he would give petitioner all of the stock owned by him in the Baird Hardware Company. In reliance upon this agreement, petitioner acted as manager of the Baird Hardware Company at a nominal salary until the death of Humphreys. Humphreys died on May 25, 1945, a widower, and he did not leave any direct *197 heirs-at-law. Under the provisions of his will, and a codicil thereto, the bulk of his estate was bequeathed to the Albert J. Humphreys Memoria Corporation, the income from which was to be used for charitable purposes. No mention was made in either the will or codicil thereto of the aforesaid agreement with petitioner. In view of the provisions of Humphreys' will and codicil, and in the absence of other specific directions, the Charleston National Bank, Executor of the Estate of A. J. Humphreys, declined to turn over to petitioner the 198 shares of preferred stock and 225 shares of common stock of the company of which Humphreys died seized. A suit in chancery in the Circuit Court of Kanawha County, West Virginia, was thereupon instituted by petitioner to require the executor to turn over to him the aforesaid shares of stock. Petitioner entered into an agreement with the attorneys representing him in this suit that if he was successful, he would pay them 50 per cent of any amount recovered, including stock and accumulated dividends, as their fee. The Circuit Court rendered a decree on January 7, 1949, awarding the stock to petitioner and directing the executor to deliver the *198 aforesaid stock to him and to pay to him all accumulated dividends. The basis of the Circuit Court's decision was that petitioner possessed a contract with Humphreys to the effect that if he would remain with the Baird Hardware Company as manager at a relatively low salary during the lifetime of Humphreys, the latter would at his death leave his stock in the Baird Hardware Company to petitioner. The executor thereupon appealed the case to the Supreme Court of West Virginia, who after hearings and rehearings rendered a final decree on March 14, 1950, affirming the Circuit Court in its decision that petitioner was entitled to the aforesaid stock and dividends. In accordance with the decision of the Circuit Court of Kanawha County, as affirmed by the Supreme Court of West Virginia, the executor in 1950 delivered to petitioner the aforesaid 198 shares of preferred stock and 225 shares of the common stock of the company, and, furthermore, accumulated dividends on said stock. Shortly thereafter, within 6 months and still within the year 1950, the aforesaid stock was sold by petitioner for $45,675. This amount constitutes the fair market value of the stock as of the date of delivery *199 to petitioner. In accordance with petitioner's agreement with the attorneys who represented him in the proceedings in the Circuit Court of Kanawha County, he paid them one-half of the amount recovered therein, including one-half of the accumulated dividends received from the Estate of A. J. Humphreys, and one-half of the proceeds received from the sale of the aforesaid stock. Petitioner filed a timely income tax return for the taxable year 1945. He did not report any part of the value of the aforesaid stock received by him from the Estate of A. J. Humphreys as taxable income in such year. Opinion The parties agree to the facts which are set forth in their stipulation and which have been set forth in our Findings of Fact. With respect to their failure to file a declaration of estimated tax for 1950, the petitioners have not presented any explanation or evidence. The respondent's contentions are as follows: Petitioner, on the cash basis, realized ordinary income in 1950 on receipt by him pursuant to a court order, of certain stock possessing a fair market value of $22,837.50. He did not have receipt, actual or constructive, of such stock before 1950 because he did not, prior *200 thereto, have the stock availed to him, nor was it subject to his control and direction, nor was his right to such stock ever more than a contingent right which might never ripen into ownership. With regard to certain other items of income found by the Commissioner, totalling $290.03, the latter's determination must be sustained on petitioners' failure to introduce any proof whatsoever to refute it. Respondent argues that there can be no doubt but that petitioner took under the will of A. J. Humphreys not as a legatee but as a creditor, based upon an oral contract entered into in 1942 to the effect that if Ingram would remain with the Baird Hardware Company as manager at a relatively low salary during the lifetime of Humphreys, the latter would at his death leave his stock in the Baird Hardware Company to petitioner, so that the amount recovered was compensation for past services rendered, and, therefore, the fair market value of the amount recovered was taxable income within the meaning of section 22(a). Respondent relies upon ; and Regs. 111, section 29.22(a)-3. Respondent contends that the only question is when, i.e., what year, the income *201 is taxable to petitioners. He contends that the income is taxable in 1950, the year in which petitioner received the stock. He cites section 29.42-1 of Regulations 111, which provides "* * * if a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in the later year, assuming that the money or property would have been income in the earlier year if then received * * *." Respondent relies upon: ; and ; , certiorari denied ; , affirming ; , affirming , certiorari denied . The petitioner contends that he "became entitled to the stock in controversy on May 25, 1945, the time of the death of Mr. Humphreys"; that the stock came to petitioner as a gift effective at the time of Humphreys' *202 death, and, therefore, no tax on the stock was due for 1945; and that petitioner properly reported long term capital gain in 1950 upon the sale of the stock. Petitioner relies upon ; ; ; . We have considered all of the authorities cited by the respective parties and all of the evidence adduced. We reach the following conclusions: The parties have stipulated that the basis of the Circuit Court's decision, in the suit of petitioner to obtain the stock in question, was that petitioner "possessed a contract" with Humphreys, to the effect that if he would remain as manager of the hardware company for the remainder of Humphreys' life at a relatively low salary, the latter would, at death, leave his stock to the petitioner. There is in evidence a copy of the opinion of the Circuit Court of Kanawha County upon which the stipulation is based. In spite of the stipulation, petitioners assert on brief that Humphreys made a "gift" of the stock to petitioner, effective at the time of *203 his death. This contention is not well founded and is rejected. The Circuit Court's opinion refers repeatedly to an oral contract which it held was a valid contract. A contract is founded upon consideration. We understand from the opinion of the Circuit Court that the consideration which moved from Isaac S. Ingram was his agreement to accept the managership of Baird Hardware Company at a relatively low salary and to continue in the managership during the remaining years of the life of Humphreys. We believe that the element of consideration moving from Isaac S. Ingram to Humphreys is inconsistent with a gift by Humphreys to Ingram. The Circuit Court did not find that there was a gift in fact or in law of the stock. Humphreys did not bequeath the stock to Ingram under his will or under the codicil thereto. If he had made a bequest there would be grounds for arguing that the stock in question was the subject of a gift. It cannot be said that the agreement of Humphreys was gratuitous. The situation here is well illustrated by a common definition of a contract: "An agreement or covenant between two or more persons, in which each party binds himself to do or forbear some act, and each *204 acquires a right to what the other promises." [Cyclopedic Law Dictionary, 3rd. ed.]. The respondent's understanding of the situation is correct. Ingram had a claim under an oral contract to the stock in question because he had discharged his agreement and promise under the contract during the lifetime of Humphreys. Upon the death of Humphreys, Ingram acquired a right to what Humphreys had promised, i.e., delivery of the stock. Since Humphreys did not direct his executor to make delivery of the stock to Ingram, the latter was obliged to file his claim against the estate. He was in the position of a creditor. Also, we agree with the respondent that agreement of Humphreys to have his stock go to Ingram constituted compensation to Ingram for his agreement, promises, and performance. We do not have in evidence the will and codicil to the will of Humphreys and so we do not know what wording or form was employed whereby "the bulk of his estate was bequeathed to the Albert J. Humphreys Memorial Corporation." For example, such bequest may have been made by a bequest of the residue of the estate to the Memorial Corporation without specific mention of the stock in the hardware company. *205 However that may have been, we think it is obvious that Ingram's suit was in the nature of a suit for specific performance of the decedent's contractual promise and the obligation of the executor of his estate. In fact, the West Virginia Circuit Court ordered the executor and the trustee under the will to deliver the stock in question to Ingram. These facts negate any theory that the stock passed under the decedent's will, and any contention to that effect of petitioners is rejected. The question is not controlled by Since there was a real contest over the validity of Ingram's claim to the stock in which the executor of decedent's estate and the trustee under his will resisted Ingram's claim and apparently made a counterclaim to the stock as the subject of a bequest to the Memorial Corporation, Ingram's claim did not become fixed, for purposes of Federal taxation, until the year in which the litigation was terminated by a final judgment ordering delivery of the stock to him, which was in March of 1950 when the Supreme Court of West Virginia denied a petition for appeal from the decision of the Circuit Court. On this point , *206 controls. This is not a case where death operated to vest property in another because of a testamentary provision, or for some other reason, and it is immaterial here that the Circuit Court judge in his order said that the stock in question was impressed with a trust as of May 25, 1945 by virtue of which petitioner was entitled to all dividends from and after that date. Ingram had no control over the stock or the dividends until 1950 when his disputed claim was settled and by court decree the stock and dividends were delivered to him. See, , affirming , certiorari denied, . Until the litigation was finally concluded there existed the possibility that petitioner might not receive the stock and the dividends. The respondent's determination is sustained. The petitioners have not shown that their failure to file a declaration of estimated tax for the taxable year, as is required by law, was due to reasonable cause. On brief, petitioners do not present any argument under this question. Therefore we assume that they do not now contest respondent's action under section 294(d)(1)(A) *207 of the Code in making the prescribed addition to the tax. See [144 (?)]. Under this issue the respondent's determination is sustained. Decision will be entered for the respondent.